UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMEIKIA MOSLEY                                                          PLAINTIFF

V.                                              CIVIL ACTION NO. 3:25-CV-728-DPJ-ASH

NEXUS THERAPY MANGEMENT LLC                                              DEFENDANT

ORDER

Plaintiff Jameikia Mosley filed this employment-discrimination suit against her former

employer, Nexus Therapy Management LLC (Nexus).  Nexus moved to dismiss [5] all claims

under Federal Rule of Civil Procedure 12(b)(6).  As explained below, the Court finds the motion

[5] should be denied in part and granted in part and Mosley should be allowed to seek leave to

amend her Complaint.

I.       Facts and Procedural History

Mosley joined Nexus in 2022 as an Occupational Therapy Assistant, treating patients

under the guidance of an Occupational Therapist.  Am. Compl. [3] ¶¶ 5–6.  In her Amended

Complaint, Mosley, a black female, talks about four individuals:  (1) Jennifer Farris, a white

female colleague; (2) Hailey Brumfield, the white female Occupational Therapist who

supervised Mosley; (3) Katie Bailey, the white female Rehab Coordinator to whom Mosley

reported; and (4) Dale Brister, the white male Regional Director.  *Id.* ¶¶ 7–8.  She lodges two

primary complaints—Bailey treated her "differently than her white colleague" (Farris) and

Brumfield "improperly supervised" her.  *Id.* ¶¶ 9, 14.

**Bailey.**  Mosley claims Bailey would address Farris and other white employees by name

but would refer to Mosley as "she, they, them," or her position title.  *Id.* ¶ 10 (quotation marks

altered).  When confronted, Bailey "explained that she used pronouns so she would not confuse

Ms. Mosley with another black female, Tameka," who worked in the same facility but did not work for Nexus. *Id.* (quotation marks omitted). Mosley spoke to Bailey about "continuous disrespectful and condescending comments, being rude, and openly discussing Ms. Mosley['s] medical condition." *Id.* ¶ 11. Bailey "appeared to apologize but her behavior continued." *Id.* ¶ 13. Mosley says she also complained about Bailey's conduct to Brister, the Regional Director. *Id.* ¶¶ 9, 16.

**Brumfield.** While Mosley's Amended Complaint is a bit vague as to Brumfield, it appears she felt Brumfield did not provide enough supervision over her work with patients. *See* Charge [1-1] at 1 (claiming she "shouldn't care for patients without having [an] Occupational Therapist supervisor in the office or via telehealth"). Mosley believed that Brumfield's lack of supervision "created ethical and legal concerns" and reported the shortcoming to Bailey and Brister. Am. Compl. [3] ¶ 14; *see id.* ¶ 16. Neither responded. *Id.* ¶ 16 ("The Defendant did not address her reports.").

**Termination.** Mosley's description of her termination is also a bit difficult to follow. On March 27, 2025, Brister, after failing to acknowledge Mosley several times, told her "he needed to screen five patients" because "if the state came in and the patients did not have what they needed there could be 'a tag,'" resulting in a fine. *Id.* ¶ 21. Mosley, who had clocked out, told Brister "she would not want them to get a fine" and "proceeded to leave for the day." *Id.*

Mosley then called Brister from her home and "explained that she was uncomfortable with the way he had approached her." *Id.* ¶ 22. Brister "told Mosley that if she needed more supervision all she had to do was ask," Mosley insisted she had asked "multiple times," and "Brister then hung up on [her]." *Id.*

The next day (March 28), Mosley called in sick, and Nexus's human-resources representative wrote her up for "no call no show, insubordination, and alleged failure to do her job." *Id.* ¶ 26; *see id.* ¶¶ 23–25 (describing illness, telehealth call, and contact with HR). Mosley "sent an email to HR noting her concerns about the lack of supervision from Ms. Brumfield and the hostile work environment she was experiencing. She expressed her concern that the write-ups were retaliatory." *Id.* ¶ 27.

Then, on April 1, 2025, Mosley called in to let Nexus know "she would be out that day." *Id.* ¶ 29. Nexus responded that her employment had been terminated on March 28. *Id.* Aggrieved, Mosley filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination and retaliation. Charge [1-1] at 1–2.

After receiving her right-to-sue letter, Mosley filed this lawsuit. She advances five claims: (1) race discrimination under Title VII, (2) retaliation under Title VII, (3) hostile work environment, (4) race discrimination in violation of 42 U.S.C. § 1981, and (5) wrongful termination. Am. Compl. [3] at 6–10. Nexus moves to dismiss all claims.

II.     Standard

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

3

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Finally, "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). Thus, "[a]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id.* (citation omitted).

III.    Analysis

Nexus moved to dismiss all claims. Mosley opposes dismissal and alternatively asks for "leave to amend her complaint." Pl.'s Mem. [10] at 1. As Nexus points out, that request is not properly before the Court under Uniform Local Rules 7(b)(2), 7(b)(3)(C), 7(b)(4), and 15. But, as just noted, district courts should generally allow an opportunity to fix pleading defects. *Hart*, 199 F.3d at 247 n.6. Here, Mosley has not had repeated opportunities to correct the defects identified in this Order, and it is not yet apparent whether they are incurable. *See id.* Thus, she should be allowed to seek leave to amend her Amended Complaint, though she must comply with Federal Rule 15 and Uniform Local Rules 7(b)(2) and 15. *See Doe v. Smith*, No. 3:24-CV-788-DPJ-ASH, 2026 WL 196607, at *9 (S.D. Miss. Jan. 26, 2026).

4

A.       Hostile Work Environment

Nexus contends that Mosley's hostile-work-environment claim should be dismissed for failure to exhaust or, alternatively, for the failure to state a claim.  Def.'s Mem. [6] at 4.  While the Court finds that Mosley barely exhausted this claim, it agrees with Nexus that she failed to state it.

***Exhaustion.***  "Before seeking judicial relief, . . . Title VII plaintiffs are required to exhaust their administrative remedies by filing a charge of discrimination with the [EEOC] within 180 days of the alleged discrimination."  *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)).  Thus, "an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)).  These laws exist "'to facilitate the administrative agency's investigation and conciliatory functions'"; exhaustion is "important because it provides an opportunity for voluntary compliance before a civil action is instituted."  *Davis*, 893 F.3d at 307 (quoting *Filer*, 690 F.3d at 647).

That said, the Fifth Circuit puts substance over form.  As a result, district courts "should not be stingy when assessing the litigable claims [an EEOC charge] encompasses."  *Stingley v. Watson Quality Ford, Jackson*, 836 F. App'x 286, 291 (5th Cir. 2020) (citing S*anchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)).  They must instead look "slightly beyond [the EEOC charge's] four corners, to its substance rather than its label."  *Id.* (citing *Pacheco*, 448 F.3d at 789).

Thus, Mosley "need not use the magic words 'hostile work environment' to raise this claim." *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 509 n.3 (5th Cir. 2024) (quoting *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 332 n.14 (5th Cir. 1994), *as amended on denial of reh'g* (Nov. 10, 1994)); *see also Pacheco*, 448 F.3d at 792 (holding that a plaintiff need not "recite a specific incantation to exhaust his or her administrative remedies before the proper agency"). Nor must she "allege a prima face case before the EEOC." *Pacheco*, 448 F.3d at 792.

Mosley meets these standards by the thinnest margin. In her EEOC charge, Mosley claimed she had been "discriminated against due to [her] race (black) and retaliation." Charge [1-1] at 2. She notes there is "no box to check for hostile work environment on the form." Pl.'s Mem. [10] at 6. And she points to her account of the alleged discrimination:

> On or about November 8, 2024, I reported to my supervisors, Katie Bailey and Haley Brumfield and the Regional Director, Dale Brister that I shouldn't care for patients without having a [sic] Occupational Therapist supervisor in the office or via telehealth. **I also told them that I couldn't keep being disrespected by Ms. Bailey in the office.**

Charge [1-1] at 1 (emphasis added).

The statement that she "couldn't keep being disrespected," made in a race-discrimination charge, suggests more than a discrete discriminatory act. *Id.* It instead indicates a pattern of conduct over time. That distinguishes this case from those finding a failure to exhaust hostile-work-environment claims when the EEOC charge cited only a discrete act or acts. *See, e.g.*, *Hill v. Dep't of Veterans Affs.*, No. 08-60532, 2009 WL 348767, at *3–4 (5th Cir. Feb. 12, 2009); *Gates v. Lyondell Petrochemical Co.*, 227 F. App'x 409, 409 (5th Cir. 2007).

While a close call, it is reasonable to expect a hostile-work-environment claim to "grow out of" complaints about race discrimination that include an alleged pattern of being disrespected. *Pacheco*, 448 F.3d at 789. Mosley exhausted this claim.

6

***Failure to state a claim.*** Exhausting the hostile-work-environment claim is only the first step. Mosley must still state a claim under Rule 12(b)(6), and here she falls short. To establish a hostile-work-environment claim, a plaintiff must show:

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). To satisfy the fourth prong, the harassment "must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotation marks omitted); *see Clark v. City of Alexandria*, 116 F.4th 472, 479 (5th Cir. 2024) (same).

Mosley alleges that "Defendant subjected [her] to a continuous and pervasive hostile work environment based on her race." Am. Compl. [3] ¶ 46. She also claims "Defendant ignored [her] complaints about mistreatment and harassment and allowed her supervisors to continue their pattern of conduct towards her." *Id.* ¶ 47. These are mere conclusory assertions that are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678. And the factual allegations in the Amended Complaint addressing her various complaints to management are insufficient to plausibly show Mosley suffered severe or pervasive harassment because of her race. Indeed some of the complaints appear to have nothing to do with race. Though this claim has not been stated, Mosley will be given an opportunity to seek leave to amend. *See Hart*, 199 F.3d at 247 n.6.

B.    Race Discrimination

In Counts I and IV, Mosley claims Nexus violated Title VII and § 1981 when it engaged in race discrimination.  Am. Compl. [3] at 6, 9.  She alleges:  "Defendant discriminated against Ms. Mosley by ignoring her complaints that her white female boss was mistreating her and treating her differently than her white female colleague.  Defendant also ignored Ms. Mosley's numerous complaints that her white female supervisor, was not properly supervising."  *Id.* ¶ 35 (unaltered).  She also claims Nexus terminated her employment because of race.  *Id.* ¶ 36.

Nexus construes these allegations as a disparate-treatment claim, and Mosley seems to agree.  *See* Def.'s Mem. [6] at 6 (discussing what Mosley must plead to support her disparate-treatment claim); Pl.'s Mem. [10] at 8.  "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin."  *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quotation marks omitted).

"[T]he inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII."  *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (quotation marks omitted)).  Under Rule 12(b)(6), Mosley need not "submit evidence to establish a prima facie case of discrimination," but she must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible."  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).  "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII:  (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status."  *Cicalese*, 924 F.3d at 767 (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

Mosley's termination satisfies the first element.  But Nexus submits that her race-discrimination claims should be dismissed because she "fails to allege she was terminated and treated differently *because of* her race."  Def.'s Mem. [6] at 7; *see also id.* at 11; Reply [11] at 3. Nexus probably doesn't mean to suggest that a complaint must contain that conclusory assertion to survive.  *See Twombly*, 550 U.S. at 555.  What matters is whether the pleaded facts plausibly show the termination was because of Mosley's race.  *Id.*  And to make that call, the Court must consider "the complaint as a whole."  *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 321 (5th Cir. 2016).

Mosley pleaded facts make this claim plausible.  To begin with, Mosley says her supervisor referred to her "as 'she,' 'they,' 'them,' or by her position title" but referred to white coworkers by name.  Am. Compl. [3] ¶ 10.  She also alleges that she complained to the regional manager (Brister), who did nothing.  *Id.* ¶¶ 9, 16.

While that might not be enough standing alone, the circumstances of the termination make the claim even more plausible.  Brister refused to acknowledge Mosley the day before Mosley's termination despite her efforts to say hello.  *Id.* ¶¶ 17–19.  Later that day, he confronted Mosley and said, "I understand that this job may not be a good fit for you."  *Id.* ¶ 20.  The two then had an awkward conversation about screening five more patients after Mosley had clocked out.  *Id.* ¶ 21.  The next morning, Mosley called in sick.  *Id.* ¶ 23.  Nexus gave her three writeups that morning for "no call no show, insubordination, and alleged failure to do her job," *id.* ¶ 26.

Mosley had never been written up before.  *Id.* ¶ 27.  And contrary to the writeups, she says she did call human resources the morning of her termination to inform Nexus that she had woken up with high blood pressure and would not be coming in.  *Id.* ¶ 23.  She also sent Nexus a doctor's excuse.  *Id.* ¶ 24.  Finally, by Mosley's telling of the story, the insubordination and

"failure to do her job" allegations are questionable.  *Id.* ¶ 26.  All of this could plausibly suggest

pretext, especially when Brister said the job was a bad fit for Mosley just *before* Mosley's

alleged conduct that caused the writeups and the termination.

The Court expects Nexus to tell a different story, but under Rule 12(b)(6), it must take

Mosley's factual allegations as true and view them in the light most favorable to her.  *See Martin*

*K. Eby Constr. Co.*, 369 F.3d at 467.  In that light, Mosley has presented "'enough fact to raise a

reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."

*In re S. Scrap Material Co.*, 541 F.3d at 587.  The motion to dismiss is denied as to the race-

discrimination claim.[1]

> C.  Retaliation

In Count II, Mosley claims Nexus violated Title VII by retaliating against her.  A plaintiff

advancing a retaliation claim must show:  "(1) she engaged in protected activity; (2) an adverse

employment action occurred; and (3) a causal link exists between the protected activity and the

adverse employment action."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir.

2007).

Nexus correctly notes that "Title VII does not protect opposition to all forms of

unscrupulous conduct"; it "protects only opposition to discrimination based on race, color,

religion, sex, or national origin."  *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th

---

[1] "Dismissal is improper 'if the allegations support relief on any possible theory.'"  *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)).  And "[t]he inquiry focuses on the entirety of the complaint, regardless of how much of it is discussed in the motion to dismiss."  *Id.*  Mosley's termination theory is enough to deny Nexus's motion to dismiss the disparate-treatment claim.  That said, Mosley is less than clear as to other discrete discriminatory acts that she may lump into this claim (like complaints about the level of supervision she received).  Those can be addressed under Rule 56.

Cir. 2010) (quotation marks omitted); *see* Def.'s Mem. [6] at 9. Nexus submits that Mosley's

vague complaints do not constitute protected activity. Def.'s Mem. [6] at 10.

> In response, Mosley points out these allegations:

> Ms. Mosley made several complaints to Dale Brister about how Ms. Bailey was treating her. Am. Compl. [3] ¶ 9

> Ms. Mosley made numerous complaints to Ms. Bailey and Mr. Brister that she was being improperly supervised by Haley Brumfield. Mosley made it clear that the lack of supervision created ethical and legal concerns. *Id.* ¶ 14

> On or about January 29, 2025, Ms. Mosley contacted Mr. Brister again to report how Ms. Bailey continued to treat her. Mr. Brister did not respond. Sometime after that, Ms. Mosley made an additional report that Ms. Brumfield was not properly supervising her. *Id.* ¶ 16

Pl.'s Mem. [10] at 9. And she cites this assertion, contained in Count II: "Ms. Mosley reported

her complaints on several occasions of discrimination and harassment by her supervisor

[(Bailey)] to the Regional Director [(Brister)]. She also reported ethical and legal concerns about

inappropriate supervision by her white female, supervising occupational therapist [(Brumfield)]."

Am. Compl. [3] ¶ 40; *see* Pl.'s Mem. [10] at 9.

Here again, the Court finds that Mosley has said enough. Though she could have tied

things together more clearly, Mosley does allege discrimination complaints about her supervisor.

Am. Compl. [3] ¶¶ 9–10, 40. And, as noted, she has pleaded facts plausibly suggesting that her

termination may have been pretext. *Id.* ¶¶ 17–26. Mosley stated a plausible claim; the motion to

dismiss is denied.

D.     Wrongful Termination

In Count V, Mosley alleges Nexus "wrongfully terminated [her] after she made several

complaints and reports to Defendant that she was being improperly supervised by Ms.

Brumfield. Ms. Mosley made clear on these occasions that she was reporting ethical and legal

violations." *Id.* ¶ 56; *see id.* ¶ 57 (claiming "Ms. Brumfield's lack of supervision was unethical and illegal"). She believes "Defendant's conduct is retaliatory and violates public policy in addition to federal discrimination laws." *Id.* ¶ 61.

In its motion to dismiss, Nexus (understandably) is unsure if Mosley is traveling under federal or state law in Count V. Def.'s Mem. [6] at 11. Mosley clarifies that she asserts a state-law wrongful-termination claim under the *McArn* exception to at-will employment. Pl.'s Mem. [10] at 11 (citing *Gray v. Town of Terry*, 196 So. 3d 211, 218 (Miss. App. 2016)); *see McArn v. Allied Bruce-Terminex*, 626 So. 2d 603, 607 (Miss. 1993) (creating "narrow public policy exception to the employment at will doctrine"). Mosley also acknowledges that the exception has been limited to "acts complained of that warrant the imposition of criminal penalties, as opposed to mere civil penalties." *Gray*, 196 So. 3d at 218 (quotation marks omitted); *see* Pl.'s Mem. [10] at 11.

Mosley's Amended Complaint does not mention criminal penalties, nor does she plead facts explaining how the conduct was "actually illegal." *Hopkins v. S. Pike Sch. Dist.*, No. 5:18-CV-142-DCB-MTP, 2019 WL 13293300, at *8 (S.D. Miss. Sept. 10, 2019). So she "seeks leave to amend . . . to include the specific criminal penalties that could be imposed based on the conduct she repeatedly reported as unethical and illegal." Pl.'s Mem. [10] at 11.

The Court finds this claim should be dismissed. *See Hopkins*, 2019 WL 13293300, at *8 (granting motion to dismiss where plaintiff didn't "specifically allege conduct that is actually criminally illegal"). But Mosley will be allowed to seek leave to amend her Complaint as to this claim.[2]

---

[2] It is plausible that Mosley's allegations about Brumfield's poor supervision relate solely to this state-law claim and her allegations about Bailey form the basis of her federal claims. Mosley should make this clear in her proposed amended complaint.

IV.    Conclusion

The Court has considered all arguments raised; those not specifically addressed would not have changed the result.  For the reasons stated, Nexus's motion to dismiss [5] is denied in part and granted in part.

The motion is denied as to Mosley's race-discrimination and retaliation claims.  The motion is granted as to the hostile-work-environment and state-law wrongful-termination claims, but Mosley will be allowed to seek leave to amend.

If she chooses, Mosley may move for leave to file an amended complaint under Rule 15(a)(2) within 14 days of this Order.  The motion for leave must comply with Local Rule 15, which requires Mosley to include, as an exhibit to the motion, the proposed amended complaint. *See* L. U. Civ. R. 15.

**SO ORDERED AND ADJUDGED** this the 29th day of May, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

13